IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORMAN K. NOLDEN,<br>    Plaintiff | :<br>:<br>:   No. 1:12-cv-01541 |
| v. | :<br>:   (Chief Judge Kane) |
| UNITED STATES OF AMERICA, et al.,<br>    Defendants | :<br>: |

**MEMORANDUM ORDER**

Presently pending before the Court is the United States of America's motion to dismiss. (Doc. No. 17.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant the motion.

**I.    BACKGROUND**[1]

On January 29, 2010, the United States Department of Veterans Affairs' Medical Center ("VA Center"), located in Lebanon, Pennsylvania, entered into a contract with the Penn State Milton S. Hershey Medical Center ("HMC") to provide ophthalmology services. (Doc. No. 19-1.) Pursuant to the terms of the contract, HMC agreed to designate ophthalmology specialists to provide services at the VA Center, such as providing on-site instructions to medical residents and performing eye examinations and surgical procedures. (Doc. No. 19-1 at 6.) The contract provides as follows:

> It is expressly agreed and understood that this is a nonpersonal services contract, as defined in Federal Acquisition Regulation (FAR) 37.101, under which the professional services rendered by the Contractor or its health-care providers are rendered in its capacity as

---

[1] Because the United States raises a factual challenge to the Court's subject-matter jurisdiction, the Court may consider the factual allegations of the pleadings as well as evidence outside the pleadings. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

1

> an independent contractor. The Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments. The Contractor and its health-care provider shall be liable for their liability-producing acts or omissions. The Contractor shall maintain or require all health-care providers performing under this contract to maintain, during the term of this contract, professional liability insurance issued by a responsible insurance carrier of not less than the following amount(s) per speciality per occurrence: one million dollars.

(Id. at 12.) In accordance with this contract, HMC ophthalmology specialists Drs. Ali Aminlari, Joseph Sassani, and David Liang, enjoyed clinical privileges at the VA Center from November 19, 2008 until December 31, 2010. (Id. at 24-59.) On April 1, 2010, the VA Center entered into a letter of agreement with HMC concerning its medical residents' clinical rotations at the VA Center. (Id. at 70-71.) The agreement provided that Dr. Sassani would be responsible for supervising the residents and that HMC would designate the medical residents and pay their salary, benefits, and liability insurance. (Id. at 70.) Moreover, the agreement provided that HMC's policies and procedures would apply to the medical residents working at the VA Center. (Id. at 71.) On May 26, 2009, HMC informed the VA Center that Dr. Hanny Isawi and other physicians would serve as an ophthalmology resident at the VA Center. (Id. at 73-74.)

On August12, 2010, Plaintiff Norman K. Nolden sought treatment at the VA Center for blurry and decreased vision in his left eye. (Doc. No. 1 ¶ 17.) The following day, Drs. Isawi and Sassani performed "cataract extraction with IOL implantation" on Plaintiff's left eye. (Id. ¶ 19.) During the surgery, Plaintiff suffered a posterior capsular tear, which Drs. Isawi and Sassani treated in part with corneal sutures. (Id. ¶ 20.) After the surgery, Plaintiff reported to the VA Center for several post-operative checkups. (Id. ¶¶ 21-26.) At the first checkup on August 14,

2010, Dr. Isawi determined that Plaintiff's eye was healing on schedule. (Id. ¶ 21.) During the next checkup on August 20, 2010, Drs. Isawi and Liang found that Plaintiff's surgery had been "complicated by a PC tear." (Id. ¶ 22.) Dr. Isawi did not remove the sutures from Plaintiff's eye at this time but asked Plaintiff to report back to the VA Center on September 2, 2010. (Id. ¶¶ 23-24.) On September 2, 2010, Drs. Isawi and Aminlari removed two of the sutures and, after attempting to remove the third suture, decided to "not attempt further manipulation of the wound." (Id. ¶¶ 26-27.) The remaining suture was removed on September 7, 2010. (Id. ¶ 30.) The next day, Plaintiff reported back to the VA Center, complaining of significant pain, sensitivity to light, and deteriorating vision in his left eye. (Id. ¶ 33.) Dr. Isawi examined the eye and diagnosed Plaintiff with "acute onset of endophthalmitis." (Id. ¶ 34.) Plaintiff was then transferred to HMC, where Dr. Scott Gardner examined him. (Id. ¶ 36.) Despite initial improvement, Plaintiff began experiencing severe pain in the eye again. (Id. ¶¶ 37-41.) On October 5, 2010, physicians at Johns Hopkins University Hospital informed Plaintiff that the "visual potential in his eye [was] extremely poor" and that he now had a "blind, painful eye." (Id. ¶ 42.) The following week, HMC physicians surgically removed the eye. (Id. ¶ 43.) Since this surgery, Plaintiff has developed cataracts in his right eye and suffered a complete loss of vision in his left eye. (Id. ¶ 45.)

In his complaint, Plaintiff alleges that Defendants Drs. Isawi and Aminlari, in the course of examining and operating on his left eye, were negligent and that the United States is vicariously liable for their negligence under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. ("FTCA"). On November 14, 2012, the United States filed a motion to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction, contending that Drs. Isawi and Aminlari were

3

independent contractors of the United States when they provided services to Plaintiff and, therefore, their actions fall outside of the jurisdiction of the FTCA.  Plaintiff filed a brief in opposition on December 12, 2012 (Doc. No. 23), and the United States filed a reply brief on January 2, 2013 (Doc. No. 26).

## II.     STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a defendant may move the Court to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  Gould, 220 F.3d at 176.  In assessing a facial attack, the court is limited to considering "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  Id.  Conversely, in reviewing a factual challenge, the court is free to consider evidence outside the pleadings.  Id.  In addition, once a defendant moves to dismiss under Rule 12(b)(1), the burden shifts to the plaintiff to demonstrate the existence of subject-matter jurisdiction.  PBGC v. White, 998 F.2d 1192, 1196 (3d Cir. 2000).

## III.    DISCUSSION

In its motion, the United States brings a factual challenge to the Court's subject-matter jurisdiction, contending that the United States cannot be held liable under the FTCA for the allegedly negligent actions of Drs. Isawi and Aminlari.  "It is black letter law that 'the United States cannot be sued . . . without the consent of Congress.'"  Becton Dickinson & Co. v. Wolckenhauer, 215 F.3d 340, 345 (3d Cir. 2000) (quoting Block v. North Dakota, 461 U.S. 273, 287 (1983)).  "When the United States consents to be sued, the terms of its waiver of sovereign

immunity define the extent of the court's jurisdiction." United States v. Mottaz, 476 U.S. 834, 841 (1986). Any such waiver "must be construed strictly in favor of the sovereign, and not enlarged . . . beyond what the language requires." United States v. Nordic Village Inc., 503 U.S. 30, 34 (1992) (internal quotation marks and citations omitted).

Under the FTCA, Congress waives the United States' sovereign immunity in certain civil actions brought against the United States to recover for personal injury or wrongful death:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The United States Supreme Court has cautioned that the FTCA is a "limited waiver of sovereign immunity" and explained that the Act "defines Government employees to include officers and employees of 'any federal agency' but excludes 'any contractor with the United States.'" United States v. Orleans, 425 U.S. 807, 813-14 (1976) (quoting 28 U.S.C. § 2671) (internal brackets omitted). The critical factor used to distinguish a federal employee from an independent contractor is whether the Government has the power to control the detailed physical performance of the contractor. Id. at 814. Control is determined by the level of physical supervision or direction the Government exerts over the daily operations of the contractor. Id. at 815; Norman v. United States, 111 F.3d 356, 357 (3d Cir. 1997). If a federal actor supervises the day-to-day operations of the job, the contractor is generally considered an employee of the United States. Orleans, 425 U.S. at 815. Conversely, if the contractor manages the job's daily functions, with the federal actor only exercising broad

supervisory powers, the contractor is likely an independent contractor even if the Government reserves the right to inspect the contractor's work and monitor its compliance with federal law. Id.

Here, HMC was primarily responsible for providing ophthalmological services at the VA Center under the terms of its contract with the VA Center. The April 1, 2010 letter of agreement specifically provided that Dr. Sassani, an HMC physician, would serve as the VA Center's on-site supervisor. In addition, the January 19, 2010 contract explicitly stated that the VA Center "retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments," even though HMC physicians were required to follow several VA Center rules and procedures and gain accreditation. That contract also required all health-care providers to maintain liability insurance.

Despite these contractual provisions, Plaintiff contends that the United States may be held vicariously liable for the actions of the HMC physicians because the physicians, when providing ophthalmological services at the VA Center, were under the supervision of Dr. Sassani, who "exercised the authority to bind . . . [the] United States." (Doc. No. 23 at 8-9.) In other words, in Plaintiff's view, because Dr. Sassani acted as a federal employee, the HMC physicians whom he supervised also acted as federal employees, not independent contractors. Upon review of Plaintiff's complaint as well as the contract and letter of agreement entered into by HMC and the VA Center, the Court finds that Plaintiff has failed to allege facts sufficient to support this conclusion. First, as discussed, the express language of the contract between the VA Center and HMC provides that the VA Center did not exercise the requisite level of control over

the HMC physicians sufficient to deem them employees of the United States.  Also, the April 1, 2010 letter of agreement designating Dr. Sassani as the supervisor of all HMC physicians at the VA Center provided that he and Dr. Scott "are responsible for the day-to-day activities of the residents," that HMC would provide "full coverage of the resident's salary and benefits including health and liability insurance," and that HMC's rules and regulations would apply to all residents.  (Id. at 70-71.)  Nothing in this agreement suggests that Dr. Sassani's duties were to be performed in the capacity of an employee of the United States or that Dr. Sassani had the authority to bind the United States.

Moreover, despite contending that Dr. Sassani was appointed by the United States to supervise the HMC physicians, Plaintiff's allegations do not support a finding that Dr. Sassani supervised or exercised control over the day-to-day operations of the HMC physicians on behalf of the United States.  Although Plaintiff generally alleges that the HMC physicians were employees of the United States, he also does not allege that they were under the control or supervision of any other federal employees.  Accordingly, the Court finds that Plaintiff fails to sufficiently allege facts supporting the legal conclusion that Drs. Isawi and Aminlari acted as employees of the United States when they treated and operated on his eye.  The Court, therefore, will grant Plaintiff leave to amend his complaint to attempt to make out such allegations.

In the alternative, Plaintiff contends that even if Drs. Isawi and Aminlari were independent contractors, the United States may still be held liable for their actions because they were "ostensible agents" of the United States.  (Doc. No. 23 at 19-22.)  In support, Plaintiff cites several cases decided under Pennsylvania law, which stand for the proposition that a hospital may be held liable for a negligent physician "if a reasonably prudent person in the patient's

7

position would be justified in believing that the care in question was being provided by the hospital." (Id. at 20-21.) Plaintiff argues that the physicians were ostensible agents of the United States because, on the day of his surgery, he reasonably presumed that Dr. Isawi and the other attending physicians were employees of the VA Center and the physicians did not inform him otherwise. (Id. at 21-22.)

The Court must reject Plaintiff's ostensible agency argument. In Logue v. United States, the Supreme Court held that state officials responsible for federal prisoners being held in a state facility were not employees of the United States for purposes of the FTCA, explaining:

> Congress, of course, could have left the determination as to whose negligence the Government should be liable for under the Federal Tort Claims Act to the law of the State involved, as it did with other aspects of liability under the Act. But it chose not to do this, and instead incorporated into the definitions of the Act the exemption from liability for injury caused by employees of a contractor. While this congressional choice leaves the courts free to look to the law of torts and agency to define 'contractor,' it does not leave them free to abrogate the exemption that the Act provides.

412 U.S. 521, 528 (1973). This language suggests that the Court must evaluate the employment status of an individual working for the United States under federal law. Several appellate courts have relied on Logue to hold that federal law determines the question of whether one is an employee of the United States for purposes of the FTCA. See, e.g., Ezekiel v. Michel, 66 F.3d 894, 899 (7th Cir. 1995) (holding that the determination of whether a physician working in a Veteran's Administration hospital "was an employee of the United States for purposes of the FTCA is a question of federal law"); Lurch v. United States, 719 F.2d 333, 337 (10th Cir. 1983) ("[I]t is well settled that the question whether one is an employee of the United States is to be determined by federal law."); see also Johnson v. United States, 534 F.3d 958, 963 (8th Cir.

2008) (holding that the state-law doctrine of apparent authority is not applicable under the FTCA). The Court finds the reasoning of these cases to be sound and, thus, will not apply Pennsylvania law in determining whether the United States may not be held vicariously liable for the actions of Drs. Isawi and Aminlari.

## IV. CONCLUSION

Based on the pleadings and the contractual agreements between HMC and the VA Center, the Court finds that Plaintiff has failed to sufficiently allege that Drs. Isawi and Dr. Aminlari treated Plaintiff in their capacities as independent contractors. Accordingly, the Court will grant the United States' motion to dismiss this action for lack of subject-matter jurisdiction but will grant Plaintiff leave to amend his complaint.

**ACCORDINGLY**, on this 18th day of June 2013, **IT IS HEREBY ORDERED THAT**:

1. The United States' motion to dismiss (Doc. No. 17) is **GRANTED** to the extent that it seeks dismissal of this action for lack of subject-matter jurisdiction; and

2. Plaintiff's complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to file an amended complaint within twenty days of the date of this order.

S/ Yvette Kane<br>
Yvette Kane, Chief Judge<br>
United States District Court<br>
Middle District of Pennsylvania