**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NORMAN K. NOLDEN,** | : | |
| Plaintiff | : | |
| | : | No. 1:12-cv-01541 |
| v. | : | |
| | : | (Judge Kane) |
| **UNITED STATES OF AMERICA, et al.,** | : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court is Defendant United States of America's motion to dismiss Plaintiff

Norman K. Nolden's amended complaint.  (Doc. No. 38.)  The motion has been fully briefed and

is ripe for disposition.  For the reasons that follow, the Court will grant the motion, and dismiss

the United States as a party to the action.

**I.      BACKGROUND**[1]

On January 29, 2010, the United States Department of Veterans Affairs' Medical Center

("VA Center"), located in Lebanon, Pennsylvania, entered into a contract with the Penn State

Milton S. Hershey Medical Center ("HMC") to provide ophthalmology services.  (Doc. No. 39-

4.)  Pursuant to the terms of the contract, HMC agreed to designate ophthalmology specialists to

provide services at the VA Center, such as providing on-site instructions to medical residents

and performing eye examinations and surgical procedures.  (Doc. No. 39-4 at 6.)  The contract

provides as follows:

> It is expressly agreed and understood that this is a nonpersonal
> services contract, as defined in Federal Acquisition Regulation (FAR)

---

[1] Because the United States raises a factual challenge to the Court's subject-matter jurisdiction, the Court may consider the factual allegations of the pleadings as well as evidence outside the pleadings.  Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

1

37.101, under which the professional services rendered by the Contractor or its health-care providers are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments. The Contractor and its health-care provider shall be liable for their liability-producing acts or omissions. The Contractor shall maintain or require all health-care providers performing under this contract to maintain, during the term of this contract, professional liability insurance issued by a responsible insurance carrier of not less than the following amount(s) per speciality per occurrence: one million dollars.

(Id. at 12.) In accordance with this contract, HMC ophthalmology specialists Drs. Ali Aminlari, Joseph Sassani, and David Liang, enjoyed clinical privileges at the VA Center from November 19, 2008 until December 31, 2010. (Id. at 24-59.) Additionally, on May 26, 2009, HMC informed the VA Center that Dr. Hanny Isawi and other physicians would serve as ophthalmology residents at the VA Center. (Id. at 73-74.) On April 1, 2010, the VA Center entered into a letter of agreement with HMC concerning its medical residents' clinical rotations at the VA Center, which provided that HMC would designate the medical residents and pay their salary, benefits, and liability insurance, and that Dr. Sassani would be responsible for supervising the residents. (Id. at 70-71.) Moreover, the agreement provided that HMC's policies and procedures would apply to the medical residents working at the VA Center. (Id. at 71.)

On August 12, 2010, Plaintiff Norman K. Nolden sought treatment at the VA Center for blurry and decreased vision in his left eye. (Doc. No. 28 ¶ 27.) Plaintiff received treatment over the next few weeks. (Id.) The details of Plaintiff's medical treatment were thoroughly set forth in the Court's memorandum addressing the United States' first motion to dismiss. (See Doc. No. 27.) Plaintiff's treatment concluded when HMC physicians surgically removed his left eye. (Id.

2

¶ 53.)  Since this surgery, Plaintiff has developed cataracts in his right eye and suffered a complete loss of vision in his left eye.  (Id. ¶ 55.)

On August 8, 2012, Plaintiff filed a complaint against Defendants Dr. Aminlari, Dr. Isawi, and the United States, alleging that Drs. Isawi and Aminlari negligently examined and operated on his left eye, and that the United States is vicariously liable for their negligence under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. ("FTCA").  On November 12, 2012, the United States filed a motion to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction, contending that Defendants Drs. Isawi and Aminlari were independent contractors of the United States when they provided services to Plaintiff and, therefore, their actions fell outside of the jurisdiction of the FTCA.  (Doc. No. 17.)  On June 18, 2013, the Court granted the United States' motion to dismiss the claim against it on the grounds that Plaintiff had not established that Defendants Drs. Isawi and Aminlari were federal employees, but allowed Plaintiff leave to file an amended complaint.  (Doc. No. 27.)

On July 3, 2013, Plaintiff filed an amended complaint (Doc. No. 28), again alleging that Defendants Drs. Isawi and Aminlari were federal employees who were negligent in the course of examining and operating on his left eye.  (Id. at 16.)  Additionally, Plaintiff contends that the FTCA independent contractor exception does not apply to this action because the United States has a non-delegable, statutory duty to provide acceptable medical care at the VA Center.  (Id. at 12.)  As in his initial complaint, Plaintiff specifically alleges that Defendants Drs. Isawi and Aminlari were federal employees because their supervisor, Dr. Sassani, was a federal employee with the right to control their work.  (Id. ¶ 66).  Plaintiff thus concludes that the United States is liable for any negligence of Drs. Isawi and Aminlari under the FTCA.  (Id. ¶ 66.)  Moreover,

Plaintiff claims that the United States is also liable for any negligence by "other physicians, nurses, and healthcare workers whose names appear in the medical records of Defendant" pertaining to Plaintiff's treatment.  (Id. ¶ 9.)

        The United States filed a motion to dismiss Plaintiff's amended complaint, arguing that Drs. Sassani, Isawi, and Aminlari are all independent contractors rather than federal employees, and thus, the Court lacks subject-matter jurisdiction as to the United States in this action.  (Doc. No. 38.)  It also contends that to the extent Plaintiff alleges that the United States is vicariously liable for certain named and unnamed healthcare providers who treated Plaintiff at the VA Center, Plaintiff fails to state a claim upon which relief can be granted.  (Doc. No. 39 at 24.)  Alternatively, the United States argues that the Court should dismiss the action against it because Plaintiff failed to file a certificate of merit as required by Pennsylvania law.  (Id. at 6.)  Further, the United States asserts that it does not have a non-delegable statutory duty that prohibits invocation of the FTCA independent contractor exception.  (Doc. No. 45 at 2.)  The Court will address the parties' arguments in turn.

## II.      STANDARD OF REVIEW

        Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a defendant may move the Court to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  Gould, 220 F.3d at 176.  In assessing a facial attack, the court is limited to considering "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  Id.  Conversely, in reviewing a factual challenge, the court is free to consider evidence outside the pleadings.  Id.  In

addition, once a defendant moves to dismiss under Rule 12(b)(1), the burden shifts to the plaintiff to demonstrate the existence of subject-matter jurisdiction.  PBGC v. White, 998 F.2d 1192, 1196 (3d Cir. 2000).

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper when the defendants are entitled to judgment as a matter of law.  See Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  To avoid dismissal, the complaint must contain allegations sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Essentially, a plaintiff must "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist."  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).  Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

## III.   DISCUSSION

In its motion, the United States brings a factual challenge to the Court's subject-matter jurisdiction, contending that the United States cannot be held liable under the FTCA for the allegedly negligent actions of Drs. Isawi and Aminlari.  (Doc. No. 38.)  "It is black letter law that 'the United States cannot be sued . . . without the consent of Congress.'"  Becton Dickinson &

Co. v. Wolckenhauer, 215 F.3d 340, 345 (3d Cir. 2000) (quoting Block v. North Dakota, 461

U.S. 273, 287 (1983)).  "When the United States consents to be sued, the terms of its waiver of

sovereign immunity define the extent of the court's jurisdiction."  United States v. Mottaz, 476

U.S. 834, 841 (1986).  Any such waiver "must be construed strictly in favor of the sovereign,

and not enlarged . . . beyond what the language requires."  United States v. Nordic Village Inc.,

503 U.S. 30, 34 (1992) (internal quotation marks and citations omitted).

Under the FTCA, Congress waives the United States' sovereign immunity in certain civil

actions brought against the United States to recover for personal injury or wrongful death:

> [T]he district courts . . . shall have exclusive jurisdiction of civil
> actions on claims against the United States, for money damages . . .
> for injury or loss of property, or personal injury or death caused by
> the negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or
> employment, under circumstances where the United States, if a
> private person, would be liable to the claimant in accordance with the
> law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).  The United States Supreme Court has cautioned that the FTCA is a

"limited waiver of sovereign immunity" and explained that the Act "defines Government

employees to include officers and employees of 'any federal agency' but excludes 'any

contractor with the United States.'"  United States v. Orleans, 425 U.S. 807, 813-14 (1976)

(quoting 28 U.S.C. § 2671) (internal brackets omitted).  The critical factor used to distinguish a

federal employee from an independent contractor is whether the Government has the power to

control the detailed physical performance of the contractor.  Id. at 814.  Control is determined by

the level of physical supervision or direction the Government exerts over the daily operations of

the contractor.  Id. at 815; Norman v. United States, 111 F.3d 356, 357 (3d Cir. 1997).  If a

federal actor supervises the day-to-day operations of the contractor's job, the contractor is

generally considered an employee of the United States.  <u>Orleans</u>, 425 U.S. at 815.  Conversely, if

the contractor manages the job's daily functions, and the federal actor exercises only broad

supervisory powers, the contractor is likely an independent contractor even if the Government

reserves the right to inspect the contractor's work and monitor its compliance with federal law.

<u>Id.</u>

### A.      Plaintiff's argument that the United States has a non-delegable duty to ensure acceptable quality of medical care provided at the VA Center

In opposing the United States' motion to dismiss his amended complaint, Plaintiff asserts

that the United States has a non-delegable statutory duty to ensure the quality of healthcare

provided to veterans through the VA Center.  (Doc. No. 41 at 12.)  Plaintiff contends that the

non-delegable duty derives from 38 U.S.C. § 1705(b)(1), which provides that the United States,

through the Secretary of Defense, must ensure medical care to eligible veterans that is "timely

and acceptable in quality."  38 U.S.C. § 1705(b)(1).  Plaintiff concludes that the FTCA's

independent contractor exception is inapplicable in instances where the United States possesses a

non-delegable duty, and therefore, even if Dr. Sassani is an independent contractor, the United

States would still be liable for any negligence by Dr. Sassani, or by those he supervises.  (Doc.

No. 41 at 12-13.)  The United States argues that it does not have a non-delegable, statutory duty

to ensure the quality of care provided to veterans through the VA Center.  (Doc. No. 45 at 2.)

Specifically, the United States contends that the plain language of Section 1703, which provides

that, "the Secretary [of Defense] . . . may contract with non-Department facilities" for "hospital

care or medical services," indicates that it does not have a non-delegable duty.  28 U.S.C. §

1703.

The Court finds that Plaintiff has not established that the United States has a non-

7

delegable statutory duty to provide quality medical care to eligible veterans.  The United States Supreme Court rejected a similar "non-delegable statutory duty" argument in <u>Logue v. United States</u>, where the plaintiff alleged that the FTCA independent contractor exception could not apply to the action because the Bureau of Prisons had a non-delegable statutory duty to care for inmates.[2]  412 U.S. 521, 528 (1973).  The Supreme Court stated that it was "not persuaded that employees of a contractor with the Government, whose physical performance is not subject to governmental supervision, are to be treated as acting on behalf of a federal agency simply because they are performing tasks that would otherwise be performed by salaried employees of the Government."  <u>Id.</u> at 531.  Courts therefore may not "abrogate the [independent contractor] exemption that the [FTCA] provides."  <u>Id.</u>  The plain language of Section 1703, coupled with the Supreme Court's holding in <u>Logue</u>, indicate that the United States does not have a non-delegable statutory duty to provide medical care to eligible veterans.

Moreover, the United States District Court for the Eastern District of Michigan considered and rejected the argument that the United States has a non-delegable statutory duty to provide medical care to eligible veterans.  <u>See</u> <u>Tyson v. United States</u>, No. 06-14465, 2007 WL 1840078, at *3 (E.D. Mich. June 26, 2007) <u>aff'd sub nom.</u> <u>Tyson v. Dep't of Veterans Affairs</u>, 279 F. App'x 334 (6th Cir. 2008).  In rejecting the plaintiff's contention that a non-delegable duty exists, the court stated that the plaintiff's theory was contrary to the Supreme Court's holding in <u>Logue</u>, and "virtually barren of support found in binding or even persuasive authority."  <u>Id.</u>  The Court finds <u>Tyson</u> instructive here.  Plaintiff has not established that the

---

[2] Much as Section 1703 allows the VA Center to contract with non-Department facilities for provision of hospital care and medical services, 18 U.S.C. § 4002 allows the Federal Bureau of Prisons to contract with state prisons for the housing of prisoners.  <u>See</u> 18 U.S.C. § 4002.

United States has a non-delegable statutory duty to provide medical care to eligible veterans.[3]

Accordingly, the Court finds Plaintiff's "non-delegable duty" argument unavailing.

### B.    Plaintiff's argument that Dr. Sassani was a federal employee

Plaintiff next argues that the Court has subject-matter jurisdiction over the United States because Dr. Sassani was a federal employee and therefore, Drs. Aminlari and Isawi were also federal employees by virtue of Dr. Sassani's supervision.  (See Doc. No. 41 at 19-22.) Specifically, Plaintiff asserts that the following facts support a finding that Dr. Sassani was a federal employee: (1) Dr. Reese, a VA Center employee, supervised Dr. Sassani; (2) Dr. Sassani signed various VA Center forms as Chief of the Service; (3) Dr. Sassani exercised apparent authority by signing a Letter of Agreement under his VA Center title rather than his HMC title; (4) Dr. Sassani held the Chief of the Service position for eleven years; (5) Dr. Sassani received extra compensation from his work with the VA Center; and (6) Dr. Sassani was "ultimately answerable" to the VA Center for the services provided in opthalmology.  (Doc. No. 41 at 19-22.)

In response, the United States argues that Dr. Sassani was an independent contractor and contends that there is "no record evidence" that anyone at the VA Center supervised or controlled Dr. Sassani's day-to-day activities.  (Doc. No. 39 at 15.)  Rather, the United States

---

[3] Plaintiff also argues that Dickerson, Inc. v. United States supports his contention that the United States has a non-delegable duty to provide healthcare to eligible veterans.  875 F.2d 1577 (11th Cir. 1989).  (See also Doc. No. 41 at 13.)  However, Dickerson is inapposite here. Although in Dickerson the United States Court of Appeals for the Eleventh Circuit found that the FTCA independent contractor exception did not apply to instances where a contractor was negligent but the duty breached was non-delegable, the finding turned on the fact that "the activity contracted for was inherently dangerous," according to Florida law.  875 F.2d at 1582. Here, the activity in question, opthalmological care, is not inherently dangerous according to state law, and therefore Dickerson is not analogous.

asserts that the contract between the VA Center and HMC identified Dr. Sassani as an independent contractor, required Dr. Sassani to carry his own insurance, and specifically stated that the VA Center "retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatment." (Doc. No. 19-1 at 12; see also Doc. No. 39 at 17.) The United States submits that this evidence shows Dr. Sassani was an independent contractor rather than a federal employee. (Doc. No. 39 at 17.)

The Court finds that Plaintiff does not establish that Dr. Sassani was a federal employee, or that Drs. Isawi and Aminlari, both under Dr. Sassani's supervision, were federal employees. First, although Plaintiff suggests that Dr. Reese, a VA Center employee, functioned as Dr. Sassani's supervisor, the record indicates that Dr. Reese did not control Dr. Sassani's day-to-day tasks.[4] (See Doc. No. 39-4 at 95-97, 106-08, 124.) Dr. Sassani stated that Dr. Quillen, an HMC employee, and not anyone at the VA Center, supervised him and evaluated his performance each year. (Doc. No. 39-4 at 132.) Further, Dr. Sassani's contract specifically stated that employees of the VA Center retained "no control over professional aspects of the services [Dr. Sassani] rendered, including . . . specific medical treatment," thereby directly contradicting Plaintiff's contention that Dr. Reese, a VA Center employee, had the authority to control Dr. Sassani's day-to-day activities. (Doc. No. 19-1 at 12.) Dr. Sassani also stated that any reports he submitted to Dr. Reese or others at the VA Center were limited to quality assurance. (Id. at 125.) Dr. Sassani's submission of quality assurance forms to the VA Center does not indicate that anyone

---

[4] Although the United States identified Dr. Reese as Dr. Sassani's VA Center supervisor in its answers to Plaintiff's interrogatories, the answer did not indicate that Dr. Reese controlled Dr. Sassani's day-to-day activities. (See Doc. No. 41-5 at 46.)

at the VA Center had the ability to control his day-to-day activities.  See Rolick v. Collins Pine

Co., 925 F.2d 661, 666 (3d Cir. 1991) ("[T]he employment of an oversight agent in no way

indicates that the independent contractor is being subjected to control.") (internal citations

omitted).  In sum, Plaintiff has failed to allege facts that establish that Dr. Reese controlled Dr.

Sassani's day-to-day activities, and thus has not established that Dr. Sassani was a VA Center

employee by virtue of Dr. Reese's supervision.

　　　　Plaintiff next argues that because Dr. Sassani signed the Letter of Agreement as Director

of the Opthalmology Residency Program at the VA Center, he exercised apparent authority, and

therefore should be considered an employee of the VA Center rather than HMC.  (Doc. No. 41 at

20.)  The Court relies on state agency law when determining whether apparent authority exists.

Azur v. Chase Bank, USA, Nat. Ass'n, 601 F.3d 212, 219 (3d Cir. 2010).  However, as the Court

indicated when it assessed Plaintiff's initial complaint, in analyzing a claim under the FTCA "the

Court must evaluate the employment status of an individual working for the United States under

federal law," and therefore, the Court must reject Plaintiff's state law-based apparent agency

argument.  Nolden v. United States, No. 12-1541, 2013 WL 3102344, at *4 (M.D. Pa. June 18,

2013).  See also Johnson v. United States, 534 F.3d 958, 963 (8th Cir. 2008) (holding that the

state-law doctrine of apparent authority is not applicable under the FTCA).  Thus, because the

Court must rely on federal law to determine whether an individual qualifies as an independent

contractor for FTCA purposes, Plaintiff's state law-based "apparent authority" argument does

not establish that Dr. Sassani was a federal employee.

　　　　Additionally, Plaintiff argues that the fact that Dr. Sassani was involved with work at the

VA Center for eleven years supports his contention that Dr. Sassani was a federal employee.

11

(Doc. No. 41 at 20.)  The Court finds that this argument is also insufficient to establish that Dr.

Sassani was a federal employee.  Merely pointing to Dr. Sassani's tenure with the VA Center

does not establish that the VA Center appointed him to his position, or that Dr. Sassani was

subject to control by VA Center employees.  The Statement of Work agreed to by the VA Center

and HMC states that, "[t]he Contractor shall identify a lead physician who will be responsible for

administration of all opthalmologic eye care service.  At this time, Dr. Joseph Sassani is

identified as the lead physician.  The contractor may request appointing a different lead

physician with a 30-day notice."  (Doc. No. 39-4 at 6.)  Thus, the plain language of the

agreement between the VA Center and HMC indicates that HMC, and not the VA Center, had

the power to appoint or remove a lead physician.  (Id.)  The Court finds that Dr. Sassani's

extended tenure with the VA Center does not indicate that he was subject to VA Center control

and therefore a federal employee.

Plaintiff further suggests that the VA Center had constructive firing power over Dr.

Sassani, because it "determines who walks in the door."  (Doc. No. 41 at 20.)   However, Dr.

Sassani indicated that this is a mischaracterization of his relationship with the VA Center.  (Doc.

No. 39-4 at 101.)  He noted that while the VA Center retained the ability to control who it

certified for admitting privileges, and therefore hypothetically was able to revoke his privileges

for failure to meet certain standards, "[t]hat's not the same as firing."  (Id. at 101.)

Requiring a contract healthcare professional to abide by the policies and procedures of

the "host" healthcare facility does not indicate that the facility supervises or exercises control

over the contracted professional.  See Gibbons v. Fronton, 533 F. Supp. 2d 449, 454 (S.D.N.Y.

2008); Klein v. Miller, No. 02-687, 2004 WL 1118725, at *6 (W.D. Tex. Mar. 30, 2004).

12

Further, merely providing facilities such as operating rooms and instruments to a healthcare professional whose contract specifically states that he is not under the control of the host facility does not establish that the professional is an employee of the host facility rather than an independent contractor.  <u>Klein</u>, 2004 WL 1118725 at *6.  The critical factor in determining whether an individual is an independent contractor or employee for FTCA purposes remains "whether the government has the power to control the detailed physical performance of the contractor."  <u>Norman</u>, 111 F.3d at 357 (internal citations omitted).  Although the VA Center provided facilities for Dr. Sassani's use and hypothetically could have revoked his clinic privileges if he failed to meet certain VA Center standards, these facts do not show that the VA Center controlled Dr. Sassani's day-to-day activities.  <u>See id.</u>  (<u>See also</u> Doc. No. 39-4 at 100-01.)  Thus, Plaintiff's argument that Dr. Sassani was a federal employee by virtue of his use of VA Center facilities and the fact that he had to comply with VA Center regulations in order to maintain his clinic privileges is unpersuasive.  The Court finds that Plaintiff has not established that the VA Center had the ability to exercise day-to-day control over Dr. Sassani, or that Dr. Sassani was "ultimately answerable" to the VA Center.  (<u>See</u> Doc. No. 41 at 22.)

Finally, Plaintiff asserts that because Dr. Sassani received extra compensation through HMC for his work at the VA Center, he acted as a "borrowed" worker of the VA Center, akin to a "temp worker."  (Doc. No. 41 at 21.)  Plaintiff's "temp worker" argument is without merit.  In his deposition, Dr. Sassani stated that he was paid by HMC, rather than the VA Center.  (Doc. No. 39-4 at 101.)  Plaintiff concedes this point, but argues that because the VA Center reimbursed HMC for the work of its physicians and residents, Dr. Sassani's position was akin to that of a "temp" employee.  (Doc. No. 41 at 21.)  However, that the VA Center reimbursed HMC

13

in general for the work HMC's employees performed at the VA Center does not indicate that the VA Center had the right to control Dr. Sassani's daily activities, or those of other HMC physicians or residents.  The agreement between the VA Center and HMC indicates that the "VA will reimburse contractor at the applicable rate for the actual hours of services provided."  (Doc. No. 39-4 at 6.)  The "contractor" referred to in the agreement is HMC, not Dr. Sassani or any other specific physician or resident.  (Id. at 4.)  Although the VA Center reimbursed HMC for the work HMC employees provide to the VA Center, the agreement indicated that it paid HMC regardless of the identity of those physicians.  (Id. at 6.)  Accordingly, Plaintiff's argument that Dr. Sassani was a "borrowed" employee by virtue of the VA Center's reimbursement payments to HMC fails, because it does not establish that the VA Center retained day-to-day control over Dr. Sassani.  See Logue, 412 U.S. 521, 527-28.

Further, in Kulper v. United States, the United States argued that it was not liable under the FTCA for the alleged negligence of an Air Force doctor who contracted to work for a hospital, in part because the doctor was a "borrowed employee."  See No. 08-04504, 2009 WL 1810718, at *3 (D.N.J. June 25, 2009).  The United States District Court for the District of New Jersey did not reach the question of whether the doctor was a borrowed employee, because plaintiffs "failed to show that the Air Force had either 'direct,' 'broad,' or 'on-spot control" of the doctor.  Id.  Similarly, Plaintiff has not shown that the alleged "borrowing" institution, the VA Center, exerted control over the alleged borrowed employee, Dr. Sassani.  Accordingly, the Court finds that Plaintiff has failed to present sufficient facts to support the legal conclusion that Dr. Sassani was a federal employee of the VA Center, and therefore Drs. Isawi and Aminlari, whom he supervised, were likewise federal employees.

C.    **Plaintiff's argument that the United States is liable for the negligence of identified and unidentified treating medical professionals**

In his amended complaint, Plaintiff asserts that the United States is liable through the alleged negligence of "other physicians, nurses, and healthcare workers whose names appear in the medical records of Defendant pertaining to medical treatment and care provided to Plaintiff . . . ." (Doc. No. 28 ¶ 9.)  More specifically, Plaintiff pleads that the United States is liable "for the acts and omissions of its personnel as described herein, inclusive of the health care providers listed in defendants' medical records, including but not limited to Defendants, Dr. Isawi and Dr. Aminlari, and Director, Dr. Sassani, Dr. Liang and Dr. Quillen . . . ." (Id. ¶ 66.)  The United States argues that Plaintiff's above statements are conclusory, and fail to meet the pleading requirements of Ashcroft v. Iqbal and Bell Atlantic Corporation v. Twombly.  See 556 U.S. 662 (2009); 550 U.S. 544 (2007); (Doc. No. 39 at 24).

Under the requirements of Twombly and Iqbal, Plaintiff fails to sufficiently state a claim against the United States for the alleged negligence of Drs. Isawi, Liang, Quillen, Sassani, and other unnamed healthcare professionals.  Although Plaintiff's amended complaint describes in detail the allegedly negligent medical procedures and treatment he received (see Doc. No. 28 ¶¶ 28-56), it fails to offer more than conclusory statements regarding the relationship of the aforementioned named healthcare professionals to the United States.  (See id. ¶ 20-26.)  To the extent that Plaintiff's amended complaint relies on the assumption that Drs. Isawi and Aminlari were VA Center employees by virtue of Dr. Sassani's supervision, the Court finds that Dr. Sassani was not a VA Center employee.  See Section III.B.  Thus, Plaintiff cannot presume Drs. Isawi and Aminlari were VA Center employees without sufficiently pleading facts that establish the same, and Plaintiff has failed to do so here.  (See id. ¶¶ 15, 20.)  Plaintiff's amended

15

complaint merely sets forth the legal conclusion that Drs. Isawi and Aminlari "were employees

of the United States of America, and it's [sic] Department of Veterans' Affairs, by virtue of the

control over day to day activities exerted by Defendant, United States, by and through its

employee and/or agent, Director Dr. Sassani," and that Drs. Isawi and Aminlari acted as

"agent[s], servant[s], worker[s] and/or employee[s] of Defendant, United States of America,

Department of Veterans' Affairs . . . ." (Id. ¶¶ 20, 22, 24.)  Accordingly, under the requirements

of Twombly and Iqbal, the Court finds that Plaintiff fails to plead facts stating a claim against the

United States for the alleged negligence of Drs. Isawi and Aminlari.

Further, with regard to Drs. Liang and Quillen, Plaintiff offers no specific arguments, nor

pleads any specific facts to establish that Drs. Liang and Quillen were employees of the United

States, or that the VA Center had the ability to control their day-to-day activities.  Rather,

Plaintiff conclusorily pleads that the United States, "is vicariously liable for the acts and

omissions of its personnel . . . including but not limited to Defendants, Dr. Isawi and Dr.

Aminlari, and Director, Dr. Sassani, Dr. Liang and Dr. Quillen . . . ." (Id. ¶ 66.)  Plaintiff's

allegation provides no facts to establish that Drs. Isawi, Liang, Quillen, or Sassani were

employees of the United States who were subject to day-to-day control by the VA Center.

Accordingly, under the requirements of Twombly and Iqbal, Plaintiff fails to plead facts to state

a claim against the United States for the alleged negligence of Drs. Liang and Quillen.

Plaintiff's amended complaint also alleges that certain unnamed medical professionals

were negligent in treating Plaintiff, but does not specifically allege how these unnamed

individuals were negligent.  (See id. ¶¶ 9, 66.)  Again, although Plaintiff's amended complaint

describes the medical treatment he underwent in detail (see id. ¶¶ 28-56), Plaintiff fails to

specifically plead the involvement of unnamed treating healthcare professionals.  Therefore, Plaintiff has not "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist."  <u>Kost</u>, 1 F.3d at 183.  The Court finds that Plaintiff's amended complaint fails to state a claim against the United States for the alleged negligence of unnamed treating medical professionals under the pleading standards set forth in <u>Iqbal</u> and <u>Twombly</u>.  <u>See</u> 556 U.S. at 678; 550 U.S. at 555.

Plaintiff contends that if the Court finds his amended complaint insufficient, the Court should again allow him leave to amend, in order to correct the deficiencies.  (Doc. No. 41 at 25.)  Generally, when a complaint is subject to a Rule 12(b)(6) dismissal, the Court must permit the plaintiff to amend, unless such amendment would be "inequitable or futile."  <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).  However, the Court has already granted Plaintiff leave to amend in order to state a claim against Defendant United States.  (<u>See</u> Doc. No. 27 at 9.)  When a plaintiff has already once been granted leave to amend, and has "been given ample time to assemble the first amended complaint," but has again failed to sufficiently state a claim, a district court need not grant Plaintiff subsequent leave to amend.  <u>See</u> <u>Klein v. Autek Corp.</u>, 147 F. App'x 270, 278 (3d Cir. 2005).  Here, Plaintiff has been afforded an adequate opportunity to state a claim against the United States, but has failed to do so.  Accordingly, the Court finds that granting Plaintiff further leave to amend his complaint against the United States would be futile.  The Court will grant the United States' motion to dismiss Plaintiff's claims with prejudice.

## IV.    CONCLUSION

Based on the pleadings and the contractual agreements between HMC and the VA

Center, the Court finds that Plaintiff has failed to sufficiently allege that the United States possessed a non-delegable, statutory duty to provide medical care to eligible veterans.  The Court also finds that Plaintiff failed to sufficiently allege that Dr. Sassani was an employee of the VA, and that Drs. Isawi and Aminlari were also federal employees by virtue of Dr. Sassani's supervision.  The Court therefore finds that it does not have subject-matter jurisdiction over the United States in this matter based on the conduct of Drs. Sassani, Isawi, and Aminlari.  Finally, the Court finds that Plaintiff has failed to meet the pleading standards set forth in Twombly and Iqbal with regard to his claim that the United States is liable for the alleged negligence of Drs. Isawi, Aminlari, Sassani, Liang, and Quillen, or of other unnamed treating medical professionals. Accordingly, the Court will grant the United States' motion to dismiss this action with prejudice. The Court does not reach the United States' argument that Plaintiff failed to file a timely certificate of merit for Drs. Sassani, Liang, and Quillen as required by Pennsylvania law.  An order consistent with this memorandum follows.